Our first case this morning is SASB Corporation against Johnson&Johnson Healthcare Systems et al. Mr. Bach. Morning, your honors. My name is Philip Bach. I'm here for the plaintiff appellant, and I would like to reserve five minutes for rebuttal.  The district court has dismissed the amended complaint on a single ground, finding that the facts is merely an informational message, not an advertisement. The court reached that conclusion by reading only the facts' surface language, accepting defendant's characterization of its purpose, and discounting plaintiff's factual allegations about why the facts exists. The district court acknowledged the facts was, likely drafted intentionally and with great care. One question at the outset. The Optum case from 2019, is a strong case for you. Why didn't you rely on it to argue that a third party liability theory makes sense in these proceedings? Several reasons, your honor. First of all, plaintiff does plead the factual allegations supporting that claim as one of two theories of advertisement in the complaint. Defendants moved to dismiss the amended complaint, only arguing that the facts wasn't an advertisement out of the direct purchaser. No, what I'm saying, you're representing SASB. Yes. And Optum is a case that arguably helps you. Yes. So if it helps you, why not rely on it at the outset? I mean, one reason is we didn't really understand why the plaintiff received the facts. Another reason is that the plaintiff pharmacy is actually a direct purchaser. The pharmacy is the person, is the one who had purchased this product from the wholesaler and then sell it to their. But isn't the emphasis supposedly on the patient at some point, somehow that it gets down to the patient? Yes. I mean, I still don't understand why, if the case possibly helps you, why you didn't rely on it at the beginning and note it to the judge. I mean, it's four square before us as an issue. I understand the question, Your Honor. The district court raised Optum in its first opinion, dismissing the first complaint. And then plaintiff didn't cite the case in its response to defendants motion to dismiss, but the motion to dismiss didn't argue that it was relevant who was the recipient of the facts. It's just that this fax is not an advertisement. The Optum is more about if the defendant argues that the recipient of the fax wasn't the right person or something that there's no claim because it wasn't an ad to them, it was an ad to somebody else. And plaintiff did argue in the response, the facts that they sent it to the pharmacy to give it to the patient, to tell the patient, here's how you can afford to buy it so that the person will buy more and the pharmacy will buy more. You seem to be focusing on primarily Exaltro, I'm gonna mispronounce the name, but as a product, but the act also deals with services. And this is purportedly offering a service to help those who can't afford Exaltro to be able to afford it and also to close the gap between its cost and that of Warfarin. So why not focus on services as opposed to the product? We alleged both. The defendant argued that because the service is free, it's not commercial, that sort of thing, but the defendants pay a lot of money to have the program. The purpose of the program is to help people afford their product. And the facts itself uses the word. The district court says it has an informational tone. An informational tone isn't a requirement of the court's cases. So if it's informational, then it's not fitting within the act. If in some way it is trying to sell a product, be it a, or a service, it could fit within the act. Isn't that correct? It's correct, Your Honor, that merely the courts said that something that's merely educational isn't an advertisement. If it doesn't identify the product and convey the idea that it's trying to make a sale, here the facts uses the word cost six times. It says the relative eight times. The fact speaks as the seller. It says on both pages, a chance. It sounds like your argument isn't that, that this wasn't informational in part. Your quarrel is with merely informational. Am I right about that? You would concede that there is a lot of this facts that is informational, i.e. not advertisement, but there are other parts of it that are advertisement. Is that your argument? I mean, sort of. I mean, advertising is information, right? So information about the product. But not all information is advertising. Not all, yes, exactly. That's my point. Yeah. So what parts of this are advertising a product rather than just providing information? Well, the information that's provided is only about selling the product. It's only about, it's offering to help the patient pay for their product. So you're just giving up on whether it's selling a service? Or helping people finance? I mean, is that a product or a service? I mean, the product is- You can explore options to lower your out-of-cost or exalt, again- Xarelto. Yeah, Xarelto. Xarelto. That sounds like a service, right? Or am I wrong? I mean, is a coupon a service? This is a, you can go to a website and log in and say that you're a patient, give them information, then they give you a coupon. You know, it's not really a service. If you can't afford, like, you'll see this on TV commercials. Sometimes we have ways that you can't afford this particular product. We offer a service that aids you to get the financing for that particular prescription. I mean, I could see that if it was like a third-party bank or something, they're gonna help you get the service. Here, they're the ones providing the service, the service is to give you a discount or some kind of information about how to pay, how to be able to afford their product so you don't stop taking it or so you don't take something else. The district court seemed, the idea that the person already had a prescription seemed to be a reason why it's not an advertisement, but the TCPA specifically addresses advertisements to existing customers. This one didn't, FACS didn't have an opt-out notice. And companies do advertise to existing customers. Here, and the complaint alleges the defendants are concerned that people will stop taking this drug. It's $400 a month. They have a FACS, they send it to somebody who's filling the prescription and it says, if you don't have insurance or you have a government insurance, here's where you can go to, and you can't afford this, we'd love to help you afford it. We want you to, you know, paying for Xarelco. So it's an advertisement from the manufacturer offering a way for the person to afford to buy the manufacturer's product through discounts. Switching gears, you alleged in a complaint that J&J sent the FACS. What are you basing that allegation on? Primarily that the FACS is in their, the FACS is from them. It's their language. It's spoken from them. It's on a template and somebody has filled in the prescribing information to FACS it. That's another reason why Xarelco would be the author and sender. Could that FACS have been sent perhaps by a doctor or an insurer? No. And the reason is? Because the doctor wouldn't send a FACS in the, near the insurance company in the language of the manufacturer. There was no cover page. By the way, this is two page FACS. It says page one or two on the first page, page two or two on the second page. It shows up. It doesn't have the FCC, the TCPA requires and the FCC regulations require that a FACS has to identify the sender, has to identify the sending machine. It has to identify how to reach them. The only information on this like that is the defendant's information. The FCC's regulation says the sender of a FACS is either the person who sent it or it was sent on their behalf or it advertises their products. This advertises defendant's products. We allege it was sent by defendants or on their behalf. We don't have any way of knowing exactly what machine sent it because we don't have the information. The defendants would have that. The defendants know who sent this. This has a copyright on the bottom from August, 2020. This was received in October of 2020. Under the third party liability theory, how would a pharmacist influence a patient's purchasing decision if they had already been prescribed the medication? Well, this FACS is intended to influence that decision and it's sent to the pharmacist to do that too. As the person comes and they get this blood thinner for $400 a month, apparently don't have insurance or they have some kind of government backed thing that maybe it's not gonna be able to afford it. They're concerned about that. They send it to the pharmacist so the pharmacist will say, here's this thing, if you can't, I know it's a lot of money. If you wanna keep buying it, that sort of thing. Does that make sense? To answer the question I said. I'm not sure. Well, the patient, just because you're prescribed the drug doesn't mean- It's already been prescribed. So this FACS isn't going to influence whether the doctor decided to prescribe it. Not the doctor, exactly, yeah. But when it says, find the resources you may need to help get started and stay on track, what does that mean? That means to pay for it. Just once or ongoing? In the future. And we allege in the complaint that the defendant is concerned that people will either switch to a different drug or just stop taking the drug. And that's what the FACS is saying. We don't want you to stop taking the drug. We want you to be able to afford it, even though it's really expensive. Rather than lowering the price, here's where you can go and get some, log in and get some coupons. Is there any hard data on what percentage of prescriptions go unfilled in the country for Xarelto or in general? I'm not, it's not in the record. I'm not aware of it. I'm sure the defendant knows. And that's something we would find in discovery is how did they track the, why was this FACS sent to this, about this particular person, his prescription? And what happens after that? What are the, I'm sure they kept track of the influence of this FACS and the influence of CarePath on people staying on Xarelto versus not. You know, just because you're prescribed the drug doesn't mean you keep taking it, especially if you can't afford it. And that's what they were concerned about. That's why they sent the FACS, or caused it to be sent. I'm not a. All right, thank you. We'll hear you on rebuttal, Mr. Box. Thank you. Mr. Daly. If you wouldn't mind, Mr. Daly, would you start with the 20HA letter we got yesterday and the issue of the sender of the FACS? Because it appears based on the 20HA letter that this was sent by your client. Your Honor, I'd be happy to do that. Mike Daly, may it please the court. Mike Daly, I'm half of the defendant appellees. The 20HA letter, I think, you know, it's not surprising that the plaintiffs want to talk about a different case. If I had this case, I would also want to talk about a different case. We will respond to the 20. That's an analogous case and that the admission has been made. So it has some relevance. Your Honor, I don't doubt that the case is worth discussing today. So the 20HA letter, first of all, I will say is, I think, procedurally defective for reasons that we will explain in a submission. It was too late, too long. It's not a statute of limitations problem. The court can discretionarily decide to pay attention to it. Yes, Your Honor. And the fact that you're making a procedural objection to it suggests very strongly to me that it's accurate and that you have no leg to stand on when it comes to who sent the fax. Okay, so let me- So maybe you could address who sent the fax. Yes, thank you, Your Honor. And then tell us what ERX is and tell us what your client's relationship is with ERX. Thank you, Your Honor. So, Your Honor, the subpoena objections that plaintiff's counsel gave to the court do not admit, just so we're clear, they do not admit that my clients instructed someone to send Mills Cashway, the plaintiff in that case, the fax in that case or any other fax. All those discovery responses say is that there is a contract with ERX. There is, there is a contract with ERX. We do not deny that. We admit that. Plaintiff's counsel has that contract and has had it for several months. It was produced by the plaintiff, sorry, by the defendants in that case and by us as well. They have had it for months now. And what they did not say in that letter is that contract gives any authority or any direction to ERX to fax anything to anyone. That contract says nothing at all about faxes. So, no, the contract- Did ERX send this fax or not? The fax in our case or in the Mills Cashway? In this case. So in the Mills Cashway case, I can say, my understanding is they had admitted to being the sender of the fax in the Mills Cashway case. On behalf of Zeralta, on behalf of your client? No, no, your honor. No? That's correct, no. Okay, well, ERX, why don't you tell us a little bit about ERX? What's the nature of the relationship between your client and ERX? So, your honor, what does it do? I'm just not familiar with it. It's the first I've heard of it. So what do they do? There are two defendants now in the Mills Cashway case. There's Change Healthcare and there's ERX. Change Healthcare is a company that supports pharmacy operations. And then ERX is a separate company that supports companies like Change Healthcare with communications to customers. My client has a contract with ERX. That contract, as I said, and as Plaintiff's Counsel knows, says nothing at all about faxing anything. That they would have said that in their letter. You've told us twice now what it doesn't do. Can you tell us what it does? Why did your client hire ERX and what does ERX do for your client? So, your honor, if I could bring it back to our case, because we're not even a defendant in the Mills Cashway. And to note, if the plaintiffs, so the whole theory of liability here is that we are necessarily the sender of the fax in our case because it references our product, Xarelto. That's not at all the approach they've taken in the Mills Cashway case. In Mills Cashway, I think they've done it correctly in that they saw that the sender's name was on the fax. They filed suit against the sender. They're following the fax, F-A-C-T-S, fax, where they go in discovery. Here, they did the exact opposite. They don't know who sent the fax and I'll get to that in a minute. What does ERX do and why did your client hire ERX? Okay, so your honor, ERX, so in our case, I'll make this proper here. I'm not even asking about a case. Right. I'm asking about the fax. You said you have a contract with ERX and it's in the record in this case, right? No, not in our case, in the Mills, and it's been produced in the Mills Cashway. You said that Mr. Bach has a copy of the contract that your client has with ERX. Yes, that's been produced by the defendants in Mills Cashway and by us in response to- All right, I'm asking you, what does ERX do? We're seeking to learn. We're seeking, the reason we have a little argument is for you to educate us. Please educate us. What does ERX do and why did your client hire ERX? So your honor, I'll make this proper. What I believe happened here is that this piece of paper, plaintiff's counsel keeps saying that it was drafted by one of the defendants. Let's go back. What does ERX do? So- Either you don't know or for some reason, you're not directly answering the question. So please tell us, do you not know what ERX does? Or if you do know what it does, please tell us what it does. Your honor, I can tell you what ERX did in the Mills Cashway case and what it was supposed to have done, if that would be helpful. In the Mills, so Mills Cashway, sorry. ERX, the document that ended up, thank you. Thank you. So they provide communications to pharmacies through computer systems. This is, what was supposed to have happened here, your honor, is that this piece of paper, which someone apparently faxed, was supposed to have been provided to the pharmacy on its computer network. So when someone shows up to pick up their prescription on the computer system, the pharmacist would see this piece of paper and they could choose to print it and then staple it to the bag that is given to the customer who is picking up his or her prescription. That is what ERX does. That is what it was supposed to do here. Now, ERX has admitted, I believe in the Mills Cashway case, that is not what happened here. That instead what happened is somehow that document was delivered as a fax. That is not what they are supposed to be doing. All right, well, it may be the case that ERX is paid money to help pharmacists fulfill prescriptions or maybe to help the patients get their prescriptions or perhaps stay on track with their prescriptions. And it's also possible that your client has no interest in or has not authorized ERX to send faxes, right? That's also possible. That sounds like what you're saying is that if ERX did send this fax, it wasn't supposed to. Correct, Your Honor. Okay, but it's also possible that ERX sent this fax and this fax does talk about Xarelto and it does have language in it that pretty clearly suggests that there are ways for the patient to stay on track, i.e. continue to use Xarelto. Isn't that what that means? I'm sorry, Your Honor, is that what means? I'm just gonna read from the fax. Once you and your doctor have decided Xarelto is right for you, Janssen Care Path will help you find the resources you may need to help get started and stay on track. Help find the resources means access funding, either some sort of subsidy, right? Get started, I assume means get your first prescription filled and stay on track, I assume means gets refills of the prescriptions. Am I misunderstanding that or misreading that? Slightly, Your Honor. So I believe what's been alleged in this case is that the prescription was first filled, picked up in September of 2020. And then this fax was delivered the following month, about a month later. So at that point, the doctor had already made the prescription decision and the patient had already made the purchasing decision. So this was not trying to induce a new purchase of a new drug that hadn't been prescribed. Right, but stay on track seems to suggest inducing the patient to continue to refill the prescription because it is certainly possible, plausible that when the patient got the prescription the first time and had to pay $400 a month, the patient might've started asking questions. Gee, is there a generic? Is there a different drug that is a blood thinner that I might go to that won't cost me $400 a month because I really can't afford that. And the whole purpose of this fax seems to be saying, don't worry, cost isn't an issue. We have Care Path. We will help you pay for Xarelto and don't even think about using Warfarin or some other cheaper product. Isn't that sort of the most logical way to read this? Well, your honor, I would say that is a possible scenario. Yes, I think the plaintiff has access to these facts much more than- If that's the case, then isn't this not ripe for a motion to dismiss, but rather we need discovery. No, your honor, I don't think so because this case fails on both elements here. One, is it an advertisement? And two, was it plausibly alleged that my clients sent this fax? Someone sent the fax. We're not disputing that, but we didn't. The questions you're being asked by Judge Hardiman with respect to who sent the fax lead to more questions. We can't resolve that here. It would seem that it needs to be resolved with some discovery. You either did or did not send the fax from a J&J entity. And you're saying no, but that sounds like it needs to be proven so that there's no material issue of fact. Your honor, I would disagree with that because the plaintiffs have to, before they get to discovery, plausibly allege that one of the two named defendants sent this fax. And I think there are at least 10 different things they could have alleged to make their case closer to the line of plausibility. You just hit the nail on the head. I mean, it's plausible that it could have, and it needs to be discovered as to whether it actually did. So when you look at Iqbal and Twombly, it's about plausibility. It's not far-fetched for them to say, we think it's one of these two entities, either CARE or the other entity that actually provides the prescription. So what's wrong with getting information further on in the litigation proceedings that tells you what the fact is or most likely is? Your honor, I agree completely that Twombly and Iqbal are the controlling pleading standard here. Our point is simply that they haven't satisfied Twombly and Iqbal. And I'll offer just 10 things that I think they should have alleged to get toward plausibility, and they have not done that. The plaintiff did not attach a fax log that would have shown the sender's number, okay? They did not attach their phone records. They filed suit three years after they received this fax. They had ample time to obtain their phone records, which would have shown who sent them the fax. They didn't allege that the doctor and the insurer were not the sender. They know who the doctor and the insurer were. They're the pharmacy. They didn't do, I think, due diligence to figure out whether they were not the sender. They could have done that before filing a suit, and they didn't. They didn't allege how the patient name and their own prescription number, the pharmacy's own prescription number got on the fax. They don't allege that. They don't allege that they received the fax for any different patient, all right? They don't allege that they received the same fax for a patient with a different doctor. If they had, they might've ruled out the doctor as the sender. They don't allege that they received the fax for a patient with a different insurer. If they had, they might've ruled out the insurer as the sender. They didn't allege any of those things, nor did they allege why they didn't allege any of those things. So your honor, to answer your question, no, I don't think they have pleaded plausibly that my client defendants were the sender here. They have not. Is it somewhat like a, when you don't know who did the harm, in a lot of cases, you'll say in a tort case, it's John Doe one, John Doe two, we're not sure who they are, but we believe it is X. Let us, we need to discover that. How's that different here? Well, your honor, I don't think those facts are alleged. There is in the operative, in both iterations of the complaint, there are, in passing some boilerplate references to the facts being sent on our behalf, but that's not really. There's something sent to a pharmacy with Xeralto on the top, and it mentions Janssen Care Path, providing the ability to afford, or better afford, this particular product. And when you look at Optum, which talks about, among other things, whether you have the promotion of a product or service being sold commercially, and you are directly or indirectly encouraged to use that particular product or service, why doesn't that apply to this case? Your honor, if you're asking whether this qualifies as an advertisement, I would think it does not, either under the Four Corners test that courts normally apply, or under the Optum test. How is this not a service that's in, at least indirectly encouraged? Thank you, your honor. So the answer to that is that the, we haven't disputed whether a Care Path is a service under the statute, but it was offered for free. No one pays anything to use Care Path, and there's law in this circuit. Indirectly, it may lead to more people purchasing Xeralto. Correct? Well, no, your honor. I think these are people who've already been prescribed and are already purchasing Xeralto, but the law in this circuit and other circuits is clear that there is, it's okay that there is some indirect downstream profit. That's not really the test for whether something is an advertisement. Pharmacists, at least my personal experience is a pharmacist will say to me, you know, this is what's prescribed, but you might want to consider X or Y, because it does the same thing with fewer side effects or whatever, or it's cheaper. And so pharmacists can have a role in purchasers switching a prescription. Your honor, I would say that is true, but what I would also say is the plaintiff has not alleged that here. If they intended to invoke the Optum third-party liability test, which they now want to invoke, they would have alleged the facts to support it. They didn't allege what they said to this individual patient. They didn't allege whether they gave this piece of paper to that patient. They didn't allege anything that they do with regard to any patient at all. So yes, it is possible, but we're here today to figure out whether this claim has been plausibly stated, and I don't think it has respectfully. Thank you. All right, rebuttal, Mr. Buck. Thank you, your honors. Responding to the last point council made, the plaintiff does allege the third-party liability theory. Paragraphs 20, 32, 42, and 44 specifically allege that the facts was designed to influence plaintiff and other pharmacists to recommend an increased patient utilization. Paragraph 46, and paragraph 69 is the legal allegation of all the prongs of the Maui Optum test. On the ERX thing, ERX is a switch. ERX is a pharmacy has a computer, and somebody is filling a prescription, and they put the prescription into the computer, and it goes to the insurance company or whoever's helping pay for it. And the information comes back about who that person is, what they're gonna cover, how much they're gonna pay, what the copay is, et cetera. In the middle is ERX. ERX takes the information there and comes back with it. And ERX has the information, and ERX is such a third party that's suggested in defendant's appellate brief. They say to the district court, they said it was probably the doctor or the insurer, and the judge said, those are more plausible that it was the doctor or the insurer. So in their appellate brief, I noticed that they say that the judge said, doctor, insurer, or third party with access to the information. Yeah, ERX. Mr. Daly said that you've had that information for a long time, is that correct? Uh, no, no, I didn't understand it. It's all marked confidential. Having it and understanding it are two different things. Just because you didn't understand it doesn't mean you didn't have it. Did you have it? We didn't have until the briefing of this case, any of the documents, briefing of this appeal, any of the documents in that case, they're all marked confidential. Even the documents they've produced are marked confidential. So you've had it for a few months at least. Yeah, in February, yeah, it's a different facts. At the top, it says from Change Healthcare, and it doesn't have this. Doesn't say Janssen Care Path. No, it's not about Janssen Care Path. It's about a 30 to 90 day for people who have commercial insurance. They say your insurance company will pay for 90 days instead of 30 days. So you switch to a 90 day. But your opening brief was filed in September of 25. So you've had it since at least then? When you say it, what specifically? Well, the information relating to ERX and the Middle District of Tennessee case that you're referring to in your 28J letter. The information in the 28J letters from their February 26 letter. But I do know from confidential documents in the case, the defendant shouldn't be arguing that maybe it was the doctor. Maybe it was the insurance company. Why not? To follow up on Judge Ambrose's question, this letter that you attached to your 28J as Exhibit A is dated February 18. Why did you sit on it until March 24? I didn't realize the implication. I didn't realize... If the other facts... I don't know who sent the facts. I don't know if it was the ERX. I'm telling you the facts looks different because of the header. And this one has this racing flag. And the documents have been coming slowly. First Change Healthcare said it didn't send the facts even though it says from Change Healthcare. We added ERX because they said ERX sent it. And we're getting contracts from decades ago and putting these pieces together. And I can tell you that there's a copyright number on the bottom of the facts in this case that I found in the documents in that case last week. Where's the... Direct us to the copyright number. It's at the bottom. It says CP- Front page or back? On the first page. First page, August 20. CP-170841V1. This is at the very bottom? Yes. So I'd need a magnifying glass for it?  But you're saying that that number appears in the other facts that Change Healthcare sent? No, no. It's not on the other facts, but it's in a contract that has a PDF that's not been produced yet, but it shows the file name is that. And so that's the template. And it's on a contract with one of these defendants and a company called NHIN, who is also owned by Change Healthcare and who works with ERX. And it's all stamped confidential. Is Change Healthcare independent? Who owns them?  Change Healthcare owns ERX, NHIN, they own PDX, and they're sort of, I don't know, they're a middleman. What do they do? Who knows? How much money they make? A ton of money. What are they doing? Apparently accessing prescription information. So assuming, we don't know, but assuming for a minute that ERX sent the facts in this case, your theory of the case is that ERX did that at the behest of and on behalf of Janssen to try to make more money for Janssen by selling more Xarelto. Is that your theory of the case?  And yeah, that somebody sent it on behalf of Janssen, meaning Janssen paid somebody to send it and send it to particular people and to put this information, use this information when they send it so that it's directed to a particular person with a particular prescription number. But we don't know that when we're filing the complaint, we just have a junk fax the pharmacist gets. Why'd you get that? I don't know. Who sent it? I guess they did. There's nobody to call and complain about the facts. What's your response to Mr. Bach's challenge that, you know, fax cover sheet, what'd you do with the fax cover sheet? There's a lot of information that your client could have been privy to that has not been appended to your complaint. Right, and those things have never been, well, look, there is no cover page. On the fax, it says page one of two, two of two. That means there was no third page. There is no fax log, meaning the plaintiff doesn't have a log of who sent faxes. And the phone company doesn't have the records of the incoming call detail record of the faxes received. And I've already asked them. Now, I didn't plead that, but I don't need to plead it. Those are things, those are people who didn't send, you know, information I don't have. If ERX sent this fax, shouldn't ERX be the defendant and not the parties that you named, J&J? Uh, no, no, they could, no. Under the TCPA, shouldn't the sender of the fax be the one that's on the hook for sending junk faxes? Isn't that the whole point of the TCPA? It does say it's unlawful to send. It doesn't define sender. And the FCC has said the sender is either the person who sent it or had it sent on their behalf because you can just outsource. So it could be both. Yeah. Both could be defendants. Both could be defendants. Do you have anything to add? No, no questions. Thank you, Mr. Bach. Thank you. Thank you, Mr. Bach. And thank you, Mr. Daley. The court will take the matter under advisement.